1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   M.B., a minor, by and through her guardian        No.  2:23-cv-1977-DAD-SCR
     ad litem Brett Brashears,
12
              Plaintiff,
13                                                      ORDER GRANTING PLAINTIFF'S MOTION
         v.                                             TO COMPEL
14
     COUNTY OF BUTTE, et al.,
15
              Defendants.
16

17

18       Before the Court is Plaintiff M.B's motion to compel further responses from Defendant

19   Deputy Michael Keating to Interrogatory Numbers 1-2 from Set One of Plaintiff's Interrogatories.

20   ECF No. 46.[1]  For the reasons set forth herein, the motion is granted.

21                              **Procedural History**

22       The underlying Complaint, filed September 13, 2023, alleges that on March 28, 2014,

23   Defendants Keating and Panuke, in their capacity as Butte County Sheriff's Deputies, entered the

24   home of Brett and Katrina Brashears without a warrant.  ECF No. 1 at ¶¶ 25, 32.  They then

25   seized and detained M.B., the Brashears' eight-year-old daughter, even though she was not "in

26   any immediate danger of suffering severe bodily injury or death in the short time it would have

27   ───────────────────────────

28   [1]  Although the original motion also sought to compel further responses to Interrogatory No. 4,
     supplementary responses have since resolved this dispute.  ECF No. 47 at 3.

                                         1

1    taken to obtain a warrant." *Id.* at ¶¶ 34-36.  The Complaint alleges that the deputies did not have

2    any "specific or articulable facts to [reasonably] suggest" otherwise or explore "less intrusive

3    alternative means of ameliorating any perceived threat" to child safety.  *Id.* at ¶¶ 36-37.  Based in

4    pertinent part on these facts, the Complaint alleges violations of constitutional rights under the

5    First, Fourth, and Fourteenth Amendments.  *Id.* at ¶¶ 64-68.

6         Interrogatory Numbers 1-2 ask Defendant Keating to "[i]dentify the efforts you made to

7    eliminate the need to remove Plaintiff M.B. from" her parents' custody.  ECF No. 47 at 4-5.

8    Defendant Keating objected that these interrogatories were vague, both as to time frame and the

9    definition of "efforts."  *Id.*  Subject to these objections, he responded that he performed the March

10   2014 welfare check, where he concluded that Plaintiff's "physical environment posed an

11   immediate threat to Plaintiff's health or safety" due to various broken or damaged fixtures around

12   the house.  *Id.* at 4-6.  This included exposed electrical wiring along the ceilings and walls,

13   broken glass, exposed nail tips, lack of utilities, miscellaneous items scattered around the home,

14   open sewage, an exposed burner connected to a propane tank, and a large knife on a small table

15   next to the couch where Plaintiff was sleeping.  *Id.*

16        On March 11, 2025, Plaintiff filed the instant motion.  ECF No. 46.  Plaintiff and

17   Defendant Keating filed a joint statement on April 3, 2025.  ECF No. 47.  The Court heard the

18   motion via Zoom on April 17, 2025.  *See* ECF Nos. 48-49.

19                                                   **Analysis**

20        If a party's response to discovery is evasive or incomplete, the propounding party may

21   move for an order compelling such response.  Fed. R. Civ. P. 37(a)(1), (4).  Plaintiff argues that

22   Defendant has not responded to the interrogatories because instead of addressing how he sought

23   to "eliminate" the need to remove Plaintiff from her home, he lists the reasons he believed she

24   was in immediate harm.  ECF No. 47 at 8.  He noted the knife on the table near her sleeping body,

25   for example, but did not say whether he asked her parents to move it before taking her.  *Id.*

26        Defendant Keating argues that his "straightforward" responses explain that he performed a

27   welfare check based on Child Protective Services' ("CPS") various concerns, including that

28   Plaintiff's parents had purportedly punished Plaintiff for speaking to CPS by making her sleep

                                                        2

1   outside. *Id.* The responses further list the conditions observed during the welfare check that,

2   pursuant to California Welfare and Institutions Code sections 300 and 305, made him believe

3   Plaintiff was in imminent danger of serious bodily injury. *Id.* at 9-10. In other words, "the effort

4   made to eliminate the need to lawfully detain Plaintiff was the welfare check." *Id.* at 10.

5   Defendant then asserts that Plaintiff's argument does not reflect the same question as the

6   interrogatories, and that he answered the actual question by describing his welfare check. ECF

7   No. 47 at 10-11.

8       The Court finds that Defendant's argument, rather than Plaintiff's, impermissibly reframes

9   the interrogatories. The scope of discovery includes "any nonprivileged matter that is relevant to

10   any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P.

11   26(b)(1). As Plaintiff notes, courts should interpret this broadly and only find that discovery

12   exceeds this scope when "the information sought has no conceivable bearing on the case." *Soto*

13   *v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). The relevance of the interrogatories at

14   issue, however, highlights the difference between the question Plaintiff asked in discovery and the

15   one Defendant answered.

16       Peace officers' removal of a child from parental custody without a warrant is permissible

17   only "if the information they possess at the time of the seizure is such as provides reasonable

18   cause to believe that the child is in imminent danger of serious bodily injury and that the scope of

19   the intrusion is reasonably necessary to avert that specific injury." *Wallis v. Spencer*, 202 F.3d

20   1126, 1138 (9th Cir. 1999). When officers decided in *Wallis*, for example, to take a child into

21   custody to prevent his father from sacrificing him to Satan on the 1991 Fall Equinox, relevant

22   questions included whether "the emergency continued to exist for more than the brief day or two"

23   after such equinox and whether he needed to be separated from his mother as well. *Id.* at 1140-

24   41.

25       Defendant Keating's responses to the interrogatories at issue explain *why* he believed

26   M.B. was in imminent danger of bodily injury. *See* ECF No. 47 at 10. This fully addresses only

27   the first of the two aspects of the Fourth Amendment inquiry identified in *Wallis*. By asking *how*

28   Defendant Keating sought "to *eliminate* the need to remove M.B. from" her home, the

3

interrogatories target the second aspect, whether any response short of seizure and removal would

have sufficed.  ECF No. 47 at 4-5 (emphasis added).  If, for example, Defendants Keating and

Panuke did not take any action between identifying hazardous conditions and taking M.B. away

from her parents, Defendant Keating's answer must explicitly say as much.

Defendant Keating's discovery responses, while relevant to the case, do not address the

equally relevant matter raised in Interrogatory Numbers 1-2.  The Court grants the motion to

compel further responses to address that gap.

### Conclusion

**IT IS HEREBY ORDERED:**

The Court GRANTS the motion to compel Defendant Keating to further respond to

Interrogatory Numbers 1-2 in accordance with this order.  Within twenty-one (21) days of this

order, Defendant Keating is ordered to propound amended responses explaining what efforts (i.e.,

what steps), if any, he took to alleviate the conditions he identified on March 28, 2014, as posing

an imminent danger to M.B., before deciding to seize and detain her instead.

**SO ORDERED.**

DATED: April 18, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

4