UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.B., a minor, by and through her guardian ad litem Brett Brashears,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF BUTTE, et al.,<br><br>Defendants. | No. 2:23-cv-1977-TLN-SCR<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO COMPEL</u> |

Before the court are Plaintiff's motions to compel further responses to requests for production of documents ("RFP") and subpoenas, primarily in the form of unredacted personal identifying information ("PII") from previously produced documents. Plaintiff moves to compel such further responses from Defendant Butte County ("County") (ECF Nos. 54, 63), third-party entity Northern California Youth and Family Programs ("NCYFP") (ECF Nos. 53, 59, 64), and third-party entity California Department of Social Services, Community Care Licensing ("CCL") (ECF Nos. 58, 65) (collectively "Responding Parties"). The Court heard arguments on these motions on July 10, 2025. ECF No. 67. The Court now grants in part, and denies in part, the motions as follows.

////

////

////

1

# I. INTRODUCTION

**A. Complaint**

The underlying Complaint, filed September 13, 2023, alleges that on March 28, 2014, Defendants Michael Keating and Panuke, in their capacities as Butte County Sheriff Deputies, entered the home of Brett and Katrina Brashears without a warrant. ECF No. 1 at ¶¶ 25, 32. They then seized and detained Plaintiff M.B., the Brashears' eight-year-old daughter, even though she was not "in any immediate danger of suffering severe bodily injury or death in the short time it would have taken to obtain a warrant." *Id.* at ¶¶ 34-36. The Complaint alleges that the deputies did not have any "specific or articulable facts to [reasonably] suggest" otherwise or explore "less intrusive alternative means of ameliorating any perceived threat" to child safety. *Id.* at ¶¶ 36-37.

Keating and Panuke turned over custody of M.B. to Defendant Stephanie Brazil, a social worker. *Id.* at ¶ 38. On the orders of her supervisor, Defendant Sarah Cornett, Brazil shuttled M.B. to Defendant Youth & Family Programs ("YFP") to find "certified" placement, rather than returning M.B. to her parents. *Id.* at ¶¶ 44-45. On March 28, 2014, the Defendants charged with M.B.'s "care and supervision" placed her in the custody of Defendant Eugene Hastings without assessing the propriety, appropriateness, or safety of such placement. *Id.* at ¶¶ 3, 51, 54. Hastings was already the subject of multiple investigations for child abuse or child sexual abuse, some dated as early as 2008. *Id.* at ¶ 52. Hastings sexually abused M.B. in the eight days she stayed with him, and the case-carrying social worker failed to act when M.B. reported this. *Id.* at ¶¶ 3, 55. Even upon removing M.B. from Hastings' custody, no one disclosed the sexual abuse to her parents or the juvenile court. *Id.* at ¶¶ 3, 56-57. The County continued to assign dependent children to Hastings until his arrest for child sexual abuse in July 2015, for which he was convicted in May 2016. *Id.* at ¶¶ 59-60.

In a claim against Brazil and Cornett under 42 U.S.C. § 1983, the Complaint alleges that from the moment the County removed M.B. from her parents' care, it had a duty to help provide for her continued safety, care, and supervision. *Id.* at ¶ 79. This meant that M.B. "held protected liberty interests in being shielded from harm inflicted in foster care," which the County and other Defendants were responsible for protecting. *Id.* Defendants breached this duty when placing her

2

in Hastings' care because adequate investigation of past allegations against Hastings, and the general exercise of reasonable care, would have revealed that the County should not have left M.B. in Hastings' custody or care for a prolonged period. *Id.* at ¶¶ 83-84. Defendants were instead "deliberately indifferent" to the danger Hastings posed to M.B. and her rights. *Id.* at ¶ 85; *see also id.* at ¶¶ 124-41 (alleging parallel *Monell* claims against the County and YFP).

### B. Procedural History

#### 1. Prior Motions to Compel

On August 28, 2024, Plaintiff moved to compel CCL to produce unredacted copies of its investigative file on Defendant Hastings, from which CCL had previously redacted the PII of both Hastings and children he had allegedly abused. ECF No. 42 at 1-2. Plaintiff and CCL agreed that state privacy protections did not, in themselves, prevent the Court from ordering disclosure. *Id.* at 2-3. They further agreed that the five-factor test under *Maldonado v. Sec'y of the Cal. Dep't of Corr. & Rehab.* governed the scope of protection afforded to discoverable materials due to privacy rights created by state law. ECF No. 42 at 3 (citing No. 2:06-cv-02696-MCE/GGH, 2007 WL 4249811, at *5 (E.D. Cal. Nov. 30, 2007) (quoting *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 698-99 (E.D. Cal. 1993))).

On October 25, 2024, the undersigned held that there was heightened relevance justifying the release of PII for:

> Hastings, Plaintiff, any other individual who was in the foster care of Defendant Hastings at the same time as Plaintiff or who witnessed Plaintiff's treatment by Defendant Hastings, and any individual identified in Complaint Report "802_09.10.2012" and the documents associated with that Complaint Report (collectively, the "Highly Relevant PII").

ECF No. 42 at 4-5. Because Complaint Report 802_09.10.2012 involved a substantiated finding that Defendant Hastings physically abused a child in his care, access to information about this incident could help Plaintiff develop an argument as to what Defendants should have known when placing M.B. with Hastings. *Id.* at 5. The Court did not, however, extend this logic to PII from allegations that either were "found unsubstantiated or inconclusive, or … post-dated

3

Plaintiff's time in the foster care of Defendant Hastings" (collectively "Less Relevant PII").[1] *Id.* Applying the *Maldonado* framework, the court granted the motion to compel production of only Highly Relevant PII. *Id.* at 5-7.

### 2. Disputed County Production

Plaintiff's Request for Production of Documents ("RFP"), Set One, included requests that the County produce (1) any communications that mention, talk about, or discuss M.B. or her family (RFP No. 1) and (2) all records related to Hastings (RFP No. 26). ECF No. 63-1 at 3, 8, 11 (Pullman County Decl., ¶ 3, Ex. A). The County responded by producing the documents but advising Plaintiff that information was redacted as confidential under federal and state law. Pullman County Decl., Ex. A. The privilege log includes redactions of excerpts from Hastings' SafeMeasures Referral History, and of third-party PII in Hastings' criminal file, based on "Third Party Privacy." Pullman County Decl., Ex. B. The County argued that the third-parties did not receive adequate notice, and that these interests outweighed any interest that disclosure might serve. Pullman County Decl., Ex. B.

Hastings' criminal file cites nine referrals against Hastings, including four for sexual abuse, several of which were initially "evaluated out" yet later became the basis for Hastings' conviction. Pullman County Decl., ¶ 5. Portions of Hastings' file also suggest there are substantiated claims from 2007 and 2012, as well as a post-event substantiated complaint against him from 2015. Pullman County Decl., ¶ 5.

On February 17, 2025, Plaintiff propounded a Request for Production of Documents, Set Ten. Pullman County Decl., ¶ 1. The County's April 9, 2025 production included privilege logs explaining that it redacted the names of juveniles, parents, and reporting parties in referrals based on Hastings' conduct. Pullman County Decl., Ex. C. The County argued that the PII of any juvenile was protected under California Welfare & Institutions Code § 827, whereas the identity of any reporters was protected under California Penal Code § 11167(d)(1). Pullman County Decl., Ex. C.

---

[1] Although the Court's previous order only defined the term "Highly Relevant PII[,]" (ECF No. 42 at 5), the Court now uses the term "Less Relevant PII" for contrast.

4

During telephonic meet and confer efforts on May 2, 2025, the County agreed to disclose the PII of children who were placed in Hastings' home during the same time period as M.B., or otherwise witnessed how Hastings treated her, as well as children who were the subject of substantiated referrals prior to M.B.'s placement.  Pullman County Decl., ¶ 4.  At issue is whether, upon producing such information, the County must also disclose the PII "of minors/victims/witnesses, reporting parties, and other third-persons in the records (including adults, such as relative witnesses)" for unsubstantiated claims or for claims postdating Hastings' custody of M.B.  Pullman County Decl., ¶ 4.

### 3. Disputed NCYFP Production

On February 20, 2025, Plaintiff subpoenaed records from NCYFP.  ECF No. 64-1 at 2 (Pullman NCYFP Decl., ¶ 1).  On March 28, 2025, NCYFP's responses often objected that unredacted production would include "confidential information related to youth in foster care and foster parents."  Pullman NCYFP Decl., ¶ 2, Ex. A.[2]  NCYFP therefore produced copies of the documents with all such PII redacted, except for Hastings and M.B.  Pullman NCYFP Decl., ¶ 2, Ex. A.  The redacted names included both minor individuals who were in Hastings' care at the time and adult relatives who filed a complaint against Hastings for physical or sexual abuse of such minors.  Pullman NCYFP Decl., ¶ 4.[3]  Several of these complaints would later form the basis of Hastings' criminal conviction.  Pullman NCYFP Decl., ¶ 5.

### 4. Disputed CCL Production

On April 21, 2025, in response to a subpoena, CCL produced redacted copies of "Application Information," "Complaint 05192015," a service request and a final report by CCL's

---

[2] The parties do not provide the original subpoena or otherwise articulate the text of Plaintiff's requests.

[3] NCYFP's production included an email that references an attachment thereto, which NCYFP did not produce.  Pullman NCYFP Decl., ¶ 4.  Plaintiff's motion to compel originally also sought production of this attachment.  ECF No. 64 at 15.  NCYFP asserts in a declaration that due to a change in email service providers on September 3, 2013, any emails and attachments not previously saved on a local drive in PDF format were lost.  ECF No. 64-2 at 1 (Dahlgren Decl., ¶ 6).  The NCYFP has searched all local drives and produced everything in its possession.  *Id*. at ¶¶ 6-8.  At the hearing on these motions, Plaintiff has agreed that aside from redactions to this document, this declaration resolves the issues raised in the motion to compel.

Investigative Branch ("IB"), "Mail Proofs," and "Accusation and Default[.]" ECF No. 65-1 at 2 (Pullman CCL Decl., ¶ 1). Complaint 05192015 concerns the 2015 allegations of sexual abuse against Hastings, which were found to be substantiated, but also includes interviews of victims and witnesses to prior allegations. Pullman CCL Decl., ¶ 1. The Application Information includes Special Incident reports, pursuant to California Code of Regulations, Title 22, § 80061, alleging that Hastings inappropriately touched one minor and partook in an altercation with others. Pullman CCL Decl., ¶ 1. CCL redacted the names of minors and other witnesses, including the reporting relatives, from Complaint 05192015 and the Application Information. Pullman CCL Decl., ¶ 1. From the Mail Proofs and Accusation and Default, CCL redacted the PII of another NCYFP-certified foster parent, whom Hastings was likely living with when the allegation underlying Complaint 05192015 was made. Pullman CCL Decl., ¶1.

Like Hastings' criminal file, the IB report indicates a total of nine complaints were filed against Hastings, including several for sexual abuse. Pullman CCL Decl., ¶ 3. Aside from only five of apparently ten interviews conducted as part of this investigation being attached,[4] CCL redacted substantive information, including the PII of the victims and witnesses that were identified or interviewed. Pullman CCL Decl., ¶ 3. The prior allegations made by the witnesses and victims in this report formed the basis of Hastings' criminal conviction. Pullman CCL Decl., ¶ 3. CCL's current and prior production further indicate the existence of substantiated claims from 2007 and 2012, respectively. Pullman CCL Decl., ¶ 3.

**5. Motion History**

Plaintiff filed the original motion to compel further responses from NCYFP, and the motion to compel responses from the County, on May 20, 2025. ECF Nos. 53-54. Plaintiff filed the motion to compel further responses from CCL on June 10, 2025, and refiled the motion as to NCYFP the next day. ECF Nos. 58-59. The parties filed the joint statement for each motion on

---

[4] CCL asserted during the hearing on this motion that it does not have the remaining five interview transcripts. Plaintiff conceded that a declaration regarding CCL's reasonable search for responsive documents will sufficiently address this issue. The Court need not further discuss the missing interviews.

6

1 | June 26, 2025.  ECF Nos. 63-65.  The undersigned heard all three motions via video conference

2 | on July 10, 2025.  ECF No. 67.

## II. LEGAL STANDARD

As a general rule, discovery may be obtained regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  Courts can limit discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).  Courts can also issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Such an order can, *inter alia*, forbid disclosure or discovery, specify terms and conditions thereof, limit the scope to certain matters or prohibit discovery as to certain matters, and prohibit the parties from sharing confidential commercial information or limit how they do so.  Fed. R. Civ. P. 26(c)(1)(A), (B), (D), (G).

### A. Requests for Production of Documents

RFPs ask a party to "produce and permit the requesting party or its representative to inspect, copy, test, or sample…items in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1).  For such purposes, documents are in the responding party's "control" if the party has "the legal right, authority, or practical ability to obtain the materials sought upon demand[,]" like from an affiliate corporation.  *U.S. Intern. Trade Commission v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005) (quoting *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)); *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000).

Responsive documents include "any designated documents or electronically stored information…stored in any medium from which information can be obtained either directly or, if

necessary, after translation by the responding party into a reasonably usable form[.]" Fed. R. Civ. P. 34(a)(1)(A). In general, however, a party need not produce electronically stored information from sources that are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). If the responding party shows this is the case, the court may still order discovery and set conditions thereof if the propounding party shows good cause, in light of the limitations in Fed. R. Civ. P. 26(b)(2)(C). Fed. R. Civ. P. 26(b)(2)(B).

Any objections to a request must state whether any responsive materials were withheld as a result, and the propounding party must permit inspection of any responsive documents not withheld based on such objections. Fed. R. Civ. P. 34(a)(2)(C).

### B. Motions to Compel

A propounding party may move for an order compelling a party to answer an interrogatory or produce documents responsive to an RFP if it fails to do so. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). A discovery response that is evasive or incomplete constitutes a failure to respond. Fed. R. Civ. P. 37(a)(4).

### C. State Privacy Laws

The California Code of Regulations' chapter on foster family homes generally requires that the records regarding a child, meaning any minor that is placed with a caregiver in a licensed foster family home or approved home, be kept "confidential except as otherwise authorized by law." 22 C.C.R. §§ 89201(c)(7), 89370(c).

Juvenile case files may generally be inspected by only a list of predefined individuals, like court personnel, a district attorney authorized by law to prosecute criminal or juvenile cases, of the juvenile's parent or guardian. Cal. Welfare & Institutions Code § 827(a)(1). A juvenile case file is defined as:

> a petition filed in a juvenile court proceeding, reports of the probation officer, and all other records, including any writing as defined in [Cal. Evid. Code section 250], or electronically stored information relating to the minor, that is filed in that case or made available to the probation officer in making the probation officer's report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer.

Cal. Welfare & Institutions Code § 827(e).

8

The California Rules of the Court, meanwhile, define a "juvenile case file" to include, *inter alia*,

> (1) All documents filed in a juvenile court case;[…]
>
> (4) Documents relating to a child concerning whom a petition has been filed in juvenile court that are maintained in the office files of probation officers, social workers of child welfare services programs, and CASA volunteers;
>
> (5) Transcripts, records, or reports relating to matters prepared or released by the court, probation department, or child welfare services program; and
>
> (6) "Documents, video or audio tapes, photographs, and exhibits admitted into evidence at juvenile court hearings.

Cal. R. of Court 5.552(a).

In general, the records made or kept by a public official or agency in connection with administering any program under California's Welfare & Institutions Code or any form of public social services therein, including protective services, is confidential and not available for examination except when "directly connected with the administration of that program, or any investigation, prosecution, or criminal or civil proceeding conducted in connection" with such administration. Cal. Welfare & Institutions Code § 10850(a). Similarly, any identifying information of resource families is considered personal information for purposes of the Information Practices Act of 1977, and therefore not to be produced in response to a request made under the California Public Records Act ("CPRA"), except for specific purposes. *Id.* § 16519.55(a).

Any report of "known or reasonably suspected child abuse or neglect" made by a mandated reporter in accordance with their duty under California Penal Code § 11166 must include:

> the name, business address, and telephone number of the mandated reporter; the capacity that makes the person a mandated reporter; and the information that gave rise to the knowledge or reasonable suspicion of child abuse or neglect and the source or sources of that information.

////

////

9

Cal. Penal Code § 11167(a). The identity of the reporter is confidential and shall not be disclosed unless in certain situations, including "among agencies receiving or investigating mandated reports" and by court order. Cal. Penal Code § 11167(d)(1).

Separate from juvenile contexts, when a law enforcement official receives a report of a sex offense from the alleged victim thereof, the official must inform the person that their name will become a matter of public record unless the person requests that it not become a matter of public record. Cal. Penal Code § 293(a). The written report of the alleged offense must document that the victim was informed of this, as well as memorialize the victim's response as to whether they have chosen for their name to not become public record. Cal. Penal Code § 293(b).

### D. Balancing of Privacy Interests

The Court applied the *Maldonado* standard in balancing privacy interests in an earlier discovery dispute in this case and applies it here as well, without resolving the question whether state privacy interests apply in federal question cases generally. ECF No. 42. Under *Maldonado*, unless a state privacy interest is inconsistent with federal law, courts shall weigh the needs of the case against the state interest in keeping such information confidential. *Maldonado*, 2007 WL 4249811, at *5. As a threshold matter, disclosure of the requested information is not required if it is not "significantly relevant to the issues in the case." *Id.* If it is, courts then consider: "(1) the probable encroachment of the individual's privacy right if the contested action is allowed to proceed, and the magnitude of that encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation [i.e., an area where privacy concerns have traditionally been respected]; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment." *Id.*

### III. ANALYSIS

Although the types of documents at issue in these disputes vary, the information sought across them is identical. Plaintiff seeks to compel the Responding Parties to disclose the previously redacted PII of all victims, witnesses, and mandatory reporters in any claim or referral

against Hastings alleging abuse or sexual abuse of a minor in his care. Whether these claims were substantiated or unsubstantiated varies, as does whether they predate or postdate the eight days during which Hastings fostered M.B.

All three Responding Parties raise the same general arguments to justify their refusal to disclose the documents at issue. First, they argue that several state statutes and regulations require that public entities keep confidential the case files of juveniles in foster care. *See, e.g.*, ECF Nos. 64 at 17 (citing 22 C.C.R. § 89370(c); Cal. Welfare & Institutions Code § 827), 65 at 16-18 (citing Cal. Welfare & Institutions Code §§ 827, 10850, 16519.55; Cal. Penal Code, § 293, 11167, 11167.5). CCL in particular notes that different sections of the Penal Code protect the identities of victims *and* reporters of child abuse. ECF No. 65 at 17-18 (citing Cal. Penal Code, § 293, 11167, 11167.5). Second, Responding Parties argue that under the *Maldonado* framework, the interest in disclosure does not outweigh the privacy interests the Responding Parties seek to protect. *See, e.g.,* ECF Nos. 63 at 15-20, 64 at 17-19, 65 at 19-21.

Not all the cited statutes and regulations categorically bar production of the requested information, particularly in response to a court order. Although the California Penal Code generally treats as confidential the identity of a mandated reporter who makes a complaint of suspected child abuse or neglect, for example, such information can be disclosed pursuant to a court order. Cal. Penal Code § 11167(d)(1). Some cited statutes, like section 16519.55(a) of the Welfare and Institutions Code, preclude disclosure pursuant to CPRA requests, not subpoenas. Cal. Welfare & Institutions Code § 16519.55(a).

In general, however, the undersigned has already acknowledged that authority is split on whether state law privileges and privacy protections can be invoked in discovery disputes in federal question cases. ECF No. 42 at 4; *compare Maldonado*, 2007 WL 4249811 at *5 ("This court has found that in mixed federal and state claim cases, although federal law is ultimately binding, state privilege law which is consistent with its federal equivalent significantly assists in applying privilege law to discovery disputes."), *with Jackson v. County of Sacramento*, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (refusing to consider state law privileges). When resolving Plaintiff's prior motion to compel further responses from CCL, the undersigned instead

11

incorporated any state laws that reflect such privacy interests into the first step of the Court's analysis under the *Maldonado* framework. ECF No. 42 at 4-5. No party has demonstrated that the Court should take a different approach here. The sole issue is therefore what information, if any, should be disclosed upon balancing of the five factors in *Maldonado*.

### A. Threshold Relevance

As to the minimum threshold of relevance, the Court's previous order distinguished between Highly Relevant and Less Relevant PII. *See supra* I.B.1; ECF No. 42 at 5. Highly Relevant PII included information for Hastings, M.B., any individual in Hastings' care at the same time as M.B., any individual who observed how Hastings treated M.B. during such care, and any individual identified in the "substantiated" Complaint Report 802_09.10.2012 and related documents. *Id.* Less Relevant PII was from any claim or referral for abuse or sexual abuse that either was found "unsubstantiated or inconclusive" or post-dated Hasting's custody of M.B. *Id.* at 5. Plaintiff now argues that "substantiated," "inconclusive," "unfounded," and "evaluated out" claims should all be deemed relevant, particularly to claims under 42 U.S.C. § 1983. *See, e.g.,* ECF No. 63 at 9-10.

The Complaint specifically alleges that Defendants acted with deliberate indifference to the danger Hastings posed when placing M.B. in his care. ECF No. 1 at ¶ 85. Deliberate indifference requires that (1) "there was an objectively substantial risk of harm;" (2) the Department of Family Services "was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed;" and (3) either the Department "actually drew that inference, or a reasonable official would have been compelled to draw that inference." *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021). The Ninth Circuit has held that even post-event evidence is both admissible and probative "for purposes of proving the existence of a municipal defendant's policy or custom". *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997). It has also held that any reports of child abuse, even those found unsubstantiated or inconclusive, "can reveal patterns that might not otherwise be detected and can be useful to law enforcement." *Endy v. Cnty. of Los Angeles*, 975 F.3d 757, 769 (9th Cir. 2020) (quoting *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1194 (9th Cir. 2009)).

1    The facts of this case further support Plaintiff's argument that even unsubstantiated claims were important when placing M.B. The parties do not dispute that Hastings' criminal case file, despite postdating Hastings' custody of M.B., includes claims and referrals predating such custody that were contemporaneously found unsubstantiated or inconclusive. *See* Pullman NCYFP Decl., ¶ 5. This suggests that such findings aside, the allegations themselves reflected the possibility that Hastings posed a danger to M.B. Information about these claims and the investigations surrounding them is therefore relevant to whether the County should have recognized a substantial risk of harm.

This does not completely erode the distinction between Highly and Less Relevant PII. Unsubstantiated referrals, when they occur in relatively close succession, can suggest a "pattern" from which an official can infer a risk of harm. *See Endy*, 975 F.3d at 769. The risk is more blatant, however, when a foster parent is found dangerous through a "substantiated" claim of abuse. The less significant any particular information is for a case, "the more likely the court will keep the information confidential." *Maldonado*, 2007 WL 4249811, at *5. The significance of each type of PII therefore remains relevant when assessing which ones should be disclosed.

**B. Factor Analysis**

With threshold relevance established, the question becomes to what extent do the five factors articulated in *Maldonado* justify disclosure. The first factor, magnitude of the encroachment on privacy, merits some distinctions between individuals whose PII the Responding Parties have redacted. As the Court previously found, the encroachment on the privacy interests of juvenile victims is substantial. ECF No. 42 at 5. Disclosure of their PII would reveal "(a) a child's status as a foster child and (b) personal and intimate details about the child, including details of physical and sexual contact" without prior notice to such victims. *Id.* The privacy interests of the parents or guardians of such victims, and of the mandatory reporters underlying each claim or referral against Hastings, are significantly weaker. Any trauma or stress they experienced from any abuse was secondary to the trauma the juveniles themselves experienced at Hastings' hand.

The state privacy statutes protecting each group reflects the distinction. Cal. Welfare and

1  Institutions Code section 827 only permits production of a juvenile case file pursuant to an order
2  by the juvenile court overseeing that case. Cal. Welfare and Institutions Code §§ 827(a)(1)(Q),
3  (a)(2)(A), (a)(3)(A). The identity of the mandated reporter alleging any child abuse or neglect, in
4  contrast, can be disclosed pursuant to "court order" in general. Cal. Penal Code § 11167(d)(1).
5  That the state more strictly controls how parties must obtain a foster child's PII compared to an
6  adult reporter's PII reflects how any encroachment on the former is more significant.

7  At the hearing, Responding Parties argued that the distinction is futile because the facts in
8  a claim or referral, combined with an adult guardian or mandated reporter's PII, would provide
9  Plaintiff with sufficient information to ascertain the identity of the juvenile victim. The
10 Responding Parties provide no authority for such a contention, and Plaintiff replied that this has
11 not proven true as to any claims for which Plaintiff already possesses such adults' PII. Whatever
12 adult Plaintiff contacts would likely have the discretion to protect the identities and privacy of the
13 corresponding juveniles. The first factor therefore weighs against disclosure of juvenile victims'
14 PII, but not against disclosure of the PII for parents, guardians, or mandated reporters.

15 The analysis of the second factor, encroachment on areas where privacy concerns are
16 normally respected, is identical to their balancing in this Court's order as to Plaintiff's prior
17 motion to compel. *See* ECF No. 42 at 5-6. The encroachment caused by such disclosure is
18 adequately addressed when, as here, a protective order prohibits public disclosure of any
19 "confidential medical records, psychological records, juvenile case files and related records
20 (including information implicating privacy rights of third parties)" produced in this case. ECF
21 No. 25 at 2; *Maldonado*, 2007 WL 4249811 at *5; *Doe No. 59 v. Santa Rosa City Schools*, No.
22 3:16-cv-01256-WHO, 2017 WL 1183774 (N.D. Cal. Mar. 1, 2017) (ordering disclosure of
23 juvenile case file and subject to a protective order); *Meyer v. Cty. of San Diego*, No. 21-cv-341-
24 RSH-BLM, 2024 WL 86603 (S.D. Cal. Jan. 8, 2024) (ordering disclosure of certain documents
25 with juvenile case file and subject to a protective order). The County argues that a protective
26 order is insufficient when Plaintiff specifically seeks to impinge on the privacy rights of the
27 individuals at issue by contacting them about alleged abuse. ECF No. 63 at 18-19. The direct
28 invasion of privacy by Plaintiff herself is considered as part of the first factor, which

consequently weighs against disclosure of the juveniles' PII. See *supra*. The second factor, however, is neutral.

The third factor, meaningful alternative methods to obtain the same information, requires distinguishing between the Responding Parties. As a preliminary matter, the Responding Parties argue that the produced documents, even with the redactions, tell Plaintiff everything the County knew or should have reasonably known about the allegations against Hastings. ECF No. 64 at 19. This is not necessarily the case for all referrals, some of which may have received a different level of attention than others. The reports for referrals that were "evaluated out," for example, may not include all the details the reporter told the party completing the report. Interviewing the reporting parties can therefore reveal whatever remaining information the County should have had in its possession when deciding whether to place M.B. in Hastings' custody.

Whether Plaintiff must receive this information separately from each Responding Party, at the possible risk of duplication, is less clear. For example, CCL argues that any law enforcement records, like the victim statements allegedly missing from the IB report, should be obtained from the County Sheriff's Office or juvenile court instead of from CCL. ECF No. 65 at 21-22, n. 10. Plaintiff argued at the hearing that obtaining every document in each party's possession will enable Plaintiff to check for discrepancies between them, particularly as Plaintiff cannot know which document refers to which individual until such production occurs. Although the third factor generally favors disclosure, requiring Plaintiff to meet and confer with CCL and NCYFP after the County complies with the court's order will allow them to revisit the scope of production needed to meet Plaintiff's needs.[5]

The fourth factor, the risk of impinging on Plaintiff's ability to vindicate her own legal rights, is where the distinction between Highly and Less Relevant PII has the most significance. The Court has previously found that Highly Relevant PII can help Plaintiff's case "by, for example, corroborating certain allegations about her mistreatment at the hands of Defendant Hastings." ECF No. 42 at 6. Such corroboration can only come from the other juveniles in

---

[5] Such an order also addresses any concerns that because CCL and NCYFP are non-profit entities with limited resources, an order compelling excessive production may cause undue burden.

Hastings' care at the time, not from their guardians or mandated reporters. This does not apply to Less Relevant PII from referrals or claims that do not directly concern M.B. or a substantive claim preceding her abuse, but merely demonstrate a general tendency to abuse foster children. *See supra*; *Endy*, 975 F.3d at 769. As to these claims, mandated reporters and parents of the purported victims can provide Plaintiff with adequate information to support her claim. This factor weighs in favor of disclosure, except as to any juvenile information among the Less Relevant PII.

The final factor, the societal interest factor, is again effectively neutral. *See* ECF No. 42 at 6. There is both a strong interest in protecting the privacy rights of those involved in the foster care system and ensuring the vindication of the legal rights of an individual like Plaintiff, through litigation subject to a protective order.

### C. Conclusion

On balance, given both the relevance of the information at issue and the relative privacy interests impinged, disclosure of the PII for any mandatory reporter, as well as any parent or guardian, referenced in the redacted documents is warranted. The disclosure of any juvenile's PII also remains warranted where it meets the Court's previous definition of "Highly Relevant PII."

After the County produces all responsive PII in its possession, Plaintiff shall meet and confer with both CCL and NCYFP as to whether the scope of their production may be reduced, based on what remains warranted in light of the County's production.

### IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motions to Compel the Responding Parties to produce previously redacted PII (ECF Nos. 53-54, 58-59, 63-65) are:

    a. **GRANTED** as to the PII of parents or guardians of any juvenile that is the subject or otherwise referenced in a claim or referral against Hastings for abuse or child abuse, regardless of the determination of such a referral, including where such PII appears in secondary documents, including but not limited to Hastings' criminal file and CCL's IB report on Hastings;

  b. **GRANTED** as to the PII of the mandatory reporters underlying any claims or referrals against Hastings, regardless of the determination of such a referral, including where such PII appears in secondary documents, including but not limited to Hastings' criminal file and CCL's IB report on Hastings;

  c. **GRANTED** as to the PII of any juvenile where such PII would meet the Court's previous definition of Highly Relevant PII (ECF No. 42), including:

    i. The name and PII for any other individual who was in the foster care of Defendant Hastings at the same time as Plaintiff, or who witnessed Plaintiff's treatment by Defendant Hastings;

    ii. the name and PII for any individual identified in Complaint Report 802_09.10.2012 and other documents pertaining to that report; and

    iii. any substantive information about such claims or referrals, if previously redacted; and

  d. **DENIED** as to the PII of any juvenile whose information does not fall within the Court's previous definition of Highly Relevant PII.

2. Within **fourteen (14) days of the date of this order**, the County shall produce any responsive documents in its possession, with PII unredacted in accordance with this Order.

3. With **fourteen (14) days of the County's production,** Plaintiff, CCL, and NCYFP shall meet and confer as to whether the scope of CCL and NCYFP's production may be reduced, and the timeline of such production.

IT IS SO ORDERED.

DATED: July 21, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

17